**John DOE, a minor, By and Through his parent and next friend, Mary DOE, Plaintiff–Appellant,**

**v.**

**DEFENDANT I, Defendant–Appellee.**

No. 89–5395.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 16, 1990.

Decided March 23, 1990.

Rehearing and Rehearing En Banc Denied May 10, 1990.

Gary D. Buchanan (argued), Barry L. Gardner, B.L. Gardner & Associates, Brentwood, Tenn., for plaintiff-appellant.

Joe I. Majors, Ortale, Kelley, Herbert & Crawford, Nashville, Tenn., Robert G. Wheeler (argued), Goodlettsville, Tenn., for defendant-appellee.

Before KENNEDY, GUY and BOGGS, Circuit Judges.

KENNEDY, Circuit Judge.

John Doe, a minor, appeals the District Court's judgment upholding an Administrative Law Judge's (ALJ) ruling that his parents are not entitled to reimbursement under the Education for All Handicapped Children Act (EAHCA or Act), 20 U.S.C. § 1400 *et seq.*, for expenses incurred while he was enrolled at a private junior high school. Appellant claimed that because appellee, a public local education agency within the meaning of the EAHCA, failed to provide him with a necessary individualized educational program (IEP) to accommodate his learning disability, he was forced to enroll in a private school where his educational needs could be met. He claims the appellee school district is therefore required to pay the cost of his private education as well as the cost of the tutoring he received while attending the public school.

It is undisputed that appellant is handicapped within the meaning of the EAHCA. He suffers primarily from a "dysgraphic disorder," which means he is unable to communicate effectively in writing. His verbal-conceptual skills are average or slightly above average. His learning disability is well-documented by several psychological test results obtained from April 1980 through December 1986.

Appellant began his education in a public school. On June 27 and 28, 1983, an impartial due process hearing was held pursuant to 20 U.S.C. § 1415(b)(2), at which time the hearing officer determined that appellee had violated the EAHCA while appellant attended elementary school. Appellant entered the fourth grade at a public elementary school on October 29, 1983 and attended that school without incident for three years. After completing his elementary education, a multi-disciplinary team (M–Team) met to determine the best education strategy for appellant upon his entry into junior high school. It recommended that in junior high school, appellant "be served on a consultative basis by the Resource teacher. [His] total program needs modification because of his difficulty in motor skills. Written tasks are very difficult for [him];

therefore, cutbacks in assignments may be needed."

Appellant began junior high school in the 1986–87 academic year. At the request of appellant's father, consultation work was suspended until the end of the first six-week marking period so the school's special education teacher could determine how well appellant performed on his own. At the end of that period, appellant received an "F" in English and "D's" in math, science, art, and social studies. Appellant was also punished several times by in-school suspension during this period for failing to complete assignments and for being late for class. Appellant's father had requested that the special education teacher do nothing until after the first six-week period and wait to see "how [John's] year developed."

The teacher contacted appellant's father a second time by letter of November 5, 1986 and asked him how he wished her to work with appellant. At that time, the second six-week period had expired and the third was about to begin.

On November 7, 1986, another M–Team meeting was held. At that meeting, appellant's parents and educators at the school developed an individualized educational program. One component of the IEP was that the "parents would arrange for a tutor to work with [appellant] during school hours outside of his academic classes." The parents enrolled appellant at a private, for-profit tutorial service, rather than use the volunteer tutors which appellee said it would provide. The IEP also stipulated that appellant's parents would have appellant retested. Although the school officials appeared willing to provide this service, appellant's father refused to allow them to perform the retesting. The IEP did not indicate who had financial responsibility for the required tutoring or retesting.

Appellant was billed for his enrollment at the private tutorial service at a rate of $170 per week. On December 3, 1986, appellee denied appellant's requests for reimbursement of this bill, claiming that it offered a "free appropriate public education" (FAPE) as required by the EAHCA by offering volunteer tutors and to retest appellant at no charge. Appellant's parents subsequently withdrew him from the public school and placed him in a private school. Doe's parents requested and were granted a due process hearing at which they sought reimbursement for the costs of tutoring, tuition at the private school, and testing. On June 17, 1987, the hearing officer found that appellee complied with the EAHCA by providing Doe with a FAPE and that his parents therefore were not entitled to reimbursement. Appellant sought review of that decision in federal district court. The District Court upheld the ALJ and granted appellee's motion for summary judgment on the grounds that appellee provided Doe a free appropriate public education by offering volunteer tutors. Appellant then brought this timely appeal.

The EAHCA requires that handicapped students be provided with a FAPE which is designed to meet the needs of handicapped children by means of an individualized educational program. 20 U.S.C. § 1401(18). The United States Supreme Court explored the meaning of a "free appropriate public education" in *Hendrick Hudson Board of Education v. Rowley*, 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982) when it said that:

> [A] court's inquiry in suits brought under § 1415(e)(2) is twofold. First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits? If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more.

*Id.* at 206–07, 102 S.Ct. at 3050–51 (footnotes omitted). *Rowley* recognized the conflict between the need for judicial oversight to guarantee compliance with the Act and the fact that courts, having less competence in matters of educational policy, should defer to the substantive decisions of educators and parents in fashioning appropriate IEP's. It resolved this conflict by requiring adherence to the procedural de-

mands of the Act, while giving utmost deference to specific educational decisions once it is determined that they stem from the procedures outlined in the Act. In determining whether the state has complied with the Act's procedures, a court must not only "satisfy itself that the State has adopted the state plan, policies, and assurances required by the Act, but also to determine that the State has created an IEP for the child in question which conforms to the requirements of § 1401(19)." *Id.* n. 27. An essential element of a FAPE is an appropriate IEP. 20 U.S.C. § 1401(18). The question we must answer in this appeal is whether the requirements of section 1401(19) have been met.

■ Appellant argues that the school failed to comply with the Act because it did not develop an IEP according to the Act's requirements and that the educational alternatives it offered appellant were not sufficient to enable him to receive any educational benefit. Appellant first claims that there was no IEP in place when he began the school year, which is in violation of 34 C.F.R. § 300.342 (1987).[1] However, appellant's contention misreads the requirements of section 300.342. Section 300.342 provides that:

(a) ... [A]t the beginning of each school year ... each public agency shall have in effect an individualized education program for every handicapped child who is receiving special education from that agency.

(b) An individualized education program must:

.    .    .    .    .

(2) Be implemented as soon as possible following the meetings under § 300.343.

This regulation merely requires that where it is determined that special educational services are necessary, an IEP must be in place at the beginning of the school year. However, it can only be implemented *after* the meeting required by section 300.343, which in this case did not occur until November 7, 1986. Although an M–Team meeting was held on May 28, 1986 regarding appellant's junior high school placement, appellant's father specifically requested through November that there be no intervention while his son began his attendance at junior high school so the parents could see how well appellant could do on his own.

■ Appellant also argues that the IEP issued after the November meeting was insufficient because it did not state his present levels of educational performance and because it failed to state appropriate objective criteria for determining whether his instructional objectives were being met. Under the EAHCA, an IEP must be a written statement which includes:

(A) a statement of the present levels of educational performance of [the] child,
(B) a statement of annual goals, including short-term instructional objectives,
(C) a statement of the specific educational services to be provided to [the] child, and the extent to which [the] child will be able to participate in regular educational programs, (D) the projected date for initiation and anticipated duration of such services, and (E) appropriate objective criteria and evaluation procedures and schedules for determining, on at least an annual basis, whether instructional objectives are being achieved.

20 U.S.C. § 1401(19). Although the Supreme Court has said that reviewing courts

1. Appellant cites the following dialogue in support of his claim:

ADMINISTRATIVE JUDGE: Prior to November there was no IEP for [John] ...?
THE WITNESS: No sir, not at our school.
ADMINISTRATIVE JUDGE: How come?
THE WITNESS: None was requested.

Although the regulations require that an IEP be constructed at the beginning of the school year, the EAHCA "emphasizes the participation of the parents in developing the child's educational program and assessing its effectiveness. See

§§ 1400(c), 1401(19), 1412(7), 1415(b)(1)(A), (C), (D), (E), and 1415(b)(2); 34 C.F.R. § 300.345 (1984)." *Burlington School Comm. v. Massachusetts Dep't of Educ.*, 471 U.S. 359, 368, 105 S.Ct. 1996, 2001, 85 L.Ed.2d 385 (1985). There was no IEP for appellant prior to November 1986, because appellant's father requested that the school allow appellant to perform on his own for a while. That request appears to be within his rights under the EAHCA. He cannot claim that the school, in honoring his request, failed to comply with the EAHCA.

should be loath to second-guess the efficacy of a state educational program, we are compelled to examine whether the IEP was developed pursuant to the statutory requirements. In doing this, we must see whether the IEP at issue "conforms with the requirements of § 1401(19)." *Rowley*, 458 U.S. at 207 n. 27, 102 S.Ct. at 3051 n. 27.

▮ The District Court found that "defendant's actions satisfied the procedural requirements of the EAHCA" without discussing what those requirements are. Whether an IEP constitutes a FAPE is a question subject to review *de novo*. *Wilson v. Marana Unified School Dist.*, 735 F.2d 1178, 1181 (9th Cir.1984); *Hawaii Dep't of Educ. v. Katherine D.*, 727 F.2d 809, 814 n. 2 (9th Cir.1983), *cert. denied*, 471 U.S. 1117, 105 S.Ct. 2360, 86 L.Ed.2d 260 (1985). *Rowley* makes clear that the school district must comply with the procedural requirements of the EAHCA. 458 U.S. at 205–06, 102 S.Ct. at 3050–51. The need to adhere to the procedural requirements of section 1401(19) was further emphasized by the Court when it referred to the "importance which Congress has attached to compliance with certain procedures in the preparation of an IEP...." *Id.* at 206, 102 S.Ct. at 3051. Thus, *Rowley* teaches that courts must subject IEP's to a strict review when determining whether they are procedurally deficient.

Although the rights of the parents to participate in the development of the IEP was the procedure on which the Court dwelt in *Rowley*, consideration of the statutory requirements for an IEP is also a procedural requirement.

Appellant's IEP contains no reference to his present educational performance as required by section 1401(19)(A). Nor does it include any "objective criteria and evaluation procedures and schedules for determining, at least on an annual basis, whether instructional objectives are being achieved" in violation of section 1401(19)(E). However, to say that these

technical deviations from section 1401(19) render appellant's IEP invalid is to exalt form over substance. It is undisputed that appellant's most recent grades were known by both the parents and the school officials. Moreover, because he was to be given instruction in the regular classroom, he would be graded according to the normal criteria used in the class. Only his method of instruction would be different. Thus, the parents and administrators had all of the information required by section 1401(19), even though it was not contained within the four corners of the IEP.

Recognizing that *Rowley* holds that the adequacy of an IEP is to be judged by whether it was produced in conformity with the requirements of section 1401(19), the Court's continued emphasis on the *procedural* safeguards afforded to parents convinces us that the Court was referring to the process by which the IEP is produced, rather than the myriad of technical items that must be included in the written document. For example, in *Rowley*, the Court said that:

> When the elaborate and highly specific procedural safeguards embodied in § 1415 [2] are contrasted with the general and somewhat imprecise substantive admonitions contained in the Act, we think that the importance Congress attached to these procedural safeguards cannot be gainsaid. It seems to us no exaggeration to say that Congress placed every bit as much emphasis upon compliance with procedures giving parents and guardians a large measure of participation at every stage of the administrative process, see, *e.g.*, §§ 1415(a)–(d), as it did upon the measurement of the resulting IEP against a substantive standard. We think that the congressional emphasis upon full participation of concerned parties throughout the development of the IEP, as well as the requirements that state and local plans be submitted to the Secretary for approval, demonstrates the legislative conviction that adequate com-

---

**2.** As previously noted, compliance with the requirements of § 1401(19) is necessary to assure that the procedural safeguards afforded in

§ 1415 are met. *See Rowley*, 458 U.S. at 206–07 n. 27, 102 S.Ct. at 3050–51 n. 27.

pliance with the procedures prescribed would in most cases assure much if not all of what Congress wished in the way of substantive content of an IEP.

*Id.* at 205–06, 102 S.Ct. at 3050–51 (footnote added). Adequate parental involvement and participation in formulating an IEP, not adherence to the laundry list of items given in section 1401(19), appear to be the Court's primary concern in requiring that procedures be strictly followed.

The Supreme Court reiterated this view in *Burlington School Committee v. Massachusetts Department of Education,* 471 U.S. 359, 368–69, 105 S.Ct. 1996, 2001–02, 85 L.Ed.2d 385 (1985):

> ... Congress incorporated an elaborate set of what it labeled "procedural safeguards" to insure the full participation of the parents and proper resolution of substantive disagreements. Section 1415(b) entitles the parents "to examine all relevant records with respect to the identification, evaluation, and educational placement of the child," to obtain an independent educational evaluation of the child, to notice of any decision to initiate or change the identification, evaluation, or educational placement of the child, and to present complaints with respect to any of the above. The parents are further entitled to "an impartial due process hearing" ... to resolve their complaints.

The Court also noted that the "Act emphasizes the participation of the parents in developing the child's educational program and assessing its effectiveness." *Id.* at 368, 102 S.Ct. at 2002.

We therefore agree with appellee that because appellant's parents were allowed to participate fully in the development of his November 7, 1986 IEP, the procedural requirements of the EAHCA were met even though two items were omitted from the document. We underscore the fact that the information absent from the IEP was nonetheless known to all the parties.

■ The second portion of the *Rowley* test—that the IEP be "reasonably calculated to enable the child to receive educational benefits," 458 U.S. at 207, 102 S.Ct. at 3051—was also met. Appellant claims that

he received D's and an F in his last graded semester at the public school, evidencing the fact that the IEP was not adequate to provide him with any educational benefit. We disagree. While it is true that "[w]hen the handicapped child is being educated in the regular classrooms of a public school system, the achievement of passing marks and advancement from grade to grade will be one important factor in determining educational benefit," 458 U.S. at 207 n. 28, 102 S.Ct. at 3051 n. 28, we cannot conclude that appellant's poor grades indicate the inadequacies of the IEP. Appellant received those grades *before* development of the IEP at the November 7 M–Team meeting. Appellant's parents at that time accepted that IEP as valid and adequate. The ALJ found that the school was sincere in its desire to help appellant and noted that appellant's own expert said the IEP had "some great ideas." Although willing to implement the IEP, the teachers were "frustrated in this endeavor by the frequent absences of the child and by the lack of coordination due to the restrictions placed by the parents on communicating with the tutor." In short, the IEP was never given a chance to succeed. Appellant has the burden of proving by a preponderance of the evidence that the IEP was inadequate. *Tatro v. State of Texas,* 703 F.2d 823, 830 (5th Cir.), *aff'd in part and rev'd in part sub nom., Irving Indep. School Dist. v. Tatro,* 468 U.S. 883, 104 S.Ct. 3371, 82 L.Ed.2d 664 (1984) ("because the IEP is jointly developed by the school district and the parents, fairness requires that the party attacking its terms should bear the burden of showing why the educational setting established by the IEP is not appropriate"). We agree with the ALJ and the District Court that appellant's IEP was calculated to allow him to receive educational benefit from the instruction.

■ We turn then to whether appellant's parents are entitled to reimbursement for the cost of tutoring, tuition at private school, and testing. With regard to reimbursement for the private school tuition, the Supreme Court said:

If the courts ultimately determine that the IEP proposed by the school officials was appropriate, the parents would be barred from obtaining reimbursement for any interim period in which their child's placement violated § 1415(e)(3).

*Burlington,* 471 U.S. at 374, 105 S.Ct. at 2004. Because we have determined that appellant's IEP was appropriate, he is not entitled to reimbursement for the cost of private schooling. Appellant's parents removed him from the free public school and placed him in a private institution at their own peril. They are responsible for the cost of doing so.

■ We similarly hold that Doe's parents are responsible for the cost of the private tutoring he received while in public school. Although the school district offered to provide volunteer tutors for appellant, appellant's parents rejected the offer in favor of hiring a private tutorial service. The IEP did not indicate who would bear financial responsibility—it merely stated that "[t]he parents would arrange for a tutor to work with [John] during school hours outside of his academic classes." The ALJ found that after the November 7 meeting, appellant's mother was under the impression that the school would not pay for private tutoring. That finding is not clearly erroneous. Moreover, the EAHCA expressly allows the educational agency to

> provide IEP services to the child (1) directly, through the agency's own staff resources, or (2) indirectly, by contracting with another public or private agency, or through other arrangements.

34 C.F.R. Pt. 300, App. C, Ques. 46. The school district chose to provide tutoring services through its own resources, which the parents rejected. The parents' desire to use a private service, rather than a public one, does not establish a duty on the part of the school to pay for it, since the choice of how services are to be provided rests initially with the school. There is no showing that the tutoring offered by appel-

lee was inadequate.[3] Therefore, appellant is not entitled to reimbursement.

Accordingly, the judgment of the District Court is AFFIRMED.

---

**3.** Appellant asserts that it "strains credibility" to think that the volunteer tutors offered by appellee could give the same degree of service to the child as the private tutoring service. This argument is wholly unsupported by any evidence of record. Moreover, it assumes that the school must provide tutorial service that is equal to that of private institutions, a burden which is not required by the EAHCA and which we refuse to impose on school districts.