919 F.2d 141
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Tara O'DONNILEY, Plaintiff-Appellant,
v.
METROPOLITAN PUBLIC SCHOOLS, Defendant-Appellee.
 No. 90-5280.
 United States Court of Appeals, Sixth Circuit.
 Nov. 26, 1990.
 
 Before BOYCE F. MARTIN, Jr., RYAN and SUHRHEINRICH, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 Tara O'Donniley appeals the decision of the administrative hearing officer and the district court denying her claim under the Education for All Handicapped Children Act (EAHCA), 20 U.S.C. Sec. 1401, et seq., to post-graduation secondary education. On appeal, she raises three issues:
 
 
 2
 1. whether the district court erred in ruling that her Individualized Education Program (IEP) satisfied EAHCA's content requirement;
 
 
 3
 2. whether the district court erred in ruling that she received educational benefit from the IEP, as required by EAHCA; and
 
 
 4
 3. whether her graduation from high school cut off her eligibility for further special education under EAHCA.
 
 
 5
 We agree with the district court that through her valid IEP Tara received a free, appropriate, public education in accordance with EAHCA and is not entitled to further education. Therefore, we affirm the decision of the district court.
 
 I.
 
 6
 Tara O'Donniley, although consistently scoring within the average range on I.Q. tests, experienced problems in school since the third grade. In an effort to deal with her academic problems, Tara attended a school for children with learning disabilities for fifth and sixth grade, repeated the sixth grade when she returned to public school, and saw both a psychologist and a psychiatrist. When she began failing classes in junior high, a neurophyschological evaluation was done which indicated that she suffered from an "attentional deficit disorder, residual type" and a language impairment. This evaluation, however, was not made available to the school system until three years later.
 
 
 7
 During her first year at John Overton High School, Tara passed all of her classes and passed the Tennessee Proficiency Test. In tenth grade, she failed English II and second semester Geometry; during summer school at a private institution she passed Geometry but again failed English II. During eleventh grade she failed Algebra II, U.S. History and Economics, but passed English II. During summer school, she passed U.S. History and Economics. She took the ACT and received a composite score of seven, placing her in the second percentile nationally.
 
 
 8
 In May of Tara's junior year, her mother requested that the school conduct a comprehensive evaluation. The school psychologist found that Tara's intellectual ability was average and that her teachers believed she was capable of passing their courses; the teachers and the psychologist recommended that Tara not be certified as learning disabled.
 
 
 9
 Tara's mother disagreed with this assessment and sought an independent psychological evaluation. Eventually, as Tara was beginning her senior year, the school's speech-language specialist, Charles Hausman, confirmed the findings of Tara's psychologist that Tara suffered from a language impairment. At the multi-disciplinary team ("M-Team") eligibility meeting, only Hausman and Tara's mother agreed that she was certifiable as language impaired. On Hausman's recommendation, however, Tara was certified and an IEP was developed to address her impairment. The IEP provided Tara with thirty minutes per week in a resource program and thirty minutes per week of speech/language therapy to teach her strategies to compensate for her impairment. The IEP also established goals and objectives for each class and a grade point average necessary to pass. To help Tara meet these goals, she was allowed to tape record classes, take two periods of Algebra II, and write her examinations outside the regular classroom. The IEP was successful to the extent that, with the exception of Algebra II, Tara passed all of her courses that semester and performed consistently with her measured level of intelligence.
 
 
 10
 The IEP, however, was not completely successful. Taking two hours of Algebra II increased Tara's frustration. The speech/language therapy also did not prove helpful because Tara was already using the coping techniques that the therapist had planned to teach her.
 
 
 11
 In response to these difficulties, Tara's mother sought another evaluation which occurred in November of Tara's senior year. The M-Team substituted other courses for the extra Algebra II class, reevaluated the goals and objectives for each class, and specified passing marks. Tara's speech/language therapy was increased to three hours per week, with the new goal of teaching her the meanings and usages of essential vocabulary words. As in the prior semester, Tara benefited from her IEP: she performed consistently with her measured level of intelligence and fell short of her ninety percent target vocabulary level by only two and one-half percentage points.
 
 
 12
 Tara graduated from high school with her class at the end of her senior year. Upon graduation, the school refused to provide her with additional education services. Tara brought this action under EAHCA to compel the school to provide further education. At a due process hearing, the hearing officer concluded that the school district had fulfilled its obligations under EAHCA and Tennessee law. The district court affirmed this decision.
 
 II.
 
 13
 Judicial review of EAHCA administrative findings is limited to two inquiries: whether the state complied with EAHCA's procedures and whether the IEP was reasonably designed to provide educational benefit. Hendrick Hudson Bd. of Educ. v. Rowley, 458 U.S. 176, 206-07 (1982). As long as the school district followed proper procedures, courts must leave questions of methodology to the educators and states. Id. at 207-08. On appeal, conclusions of law are subject to de novo review but findings of fact are only reversed for clear error. Wexler v. Westfield Bd. of Educ., 1985-86 EHLR DEC. 557: 283, 286 (3rd Cir.1986).
 
 
 14
 A. Whether the IEP failed to meet the Act's content requirements.
 
 Under EAHCA, each IEP must include:
 
 15
 (A) a statement of the present levels of educational performance of [the] child, (B) a statement of annual goals, including short-term instructional objectives, (C) a statement of the specific educational services to be provided to [the] child, and the extent to which [the] child will be able to participate in regular educational programs, (D) the projected date for initiation and anticipated duration of such services, and (E) appropriate objective criteria and evaluation procedures and schedules for determining, on at least an annual basis, whether instructional objectives are being achieved.
 
 
 16
 20 U.S.C. Sec. 1401(19). Because an IEP is crucial to helping the handicapped child, the Supreme Court requires strict review to determine its procedural adequacy. Rowley, 458 U.S. at 207 n. 27.
 
 
 17
 Tara's IEP stated her present educational level as follows: "(1) Tara shows expressive-receptive vocabulary deficiency, and (2) It was reported that Tara may be experiencing difficulties in vocabulary, grammatical comprehension and figurative language." Tara contests the sufficiency of this statement because it fails to contain the objective measurable terms necessary to determine whether the IEP corrected Tara's impairment. For this reason, Tara argues, the entire document must fail.
 
 
 18
 Our circuit recently addressed the issue of an IEP's content requirements in Doe by and through Doe v. Defendant I, 898 F.2d 1186 (6th Cir.1990). In Doe, the appellants argued that the IEP was invalid because it did not include a present educational performance level and lacked objective criteria to determine the achievement of objectives. The Sixth Circuit found that "to say these technical deviations from section 1401(19) render appellant's IEP invalid is to exalt form over substance." Doe, 898 F.2d at 1190. The appellant's education was not affected by these deficiencies because all of the parties involved possessed the knowledge which was omitted by the IEP: the student's most recent grades. Id. Furthermore, this decision did not violate the strict compliance requirement of Rowley because Rowley emphasized the procedures for developing the IEP and ensuring parental participation; these facets of the IEP were not at issue in Doe, nor in the present case. Id. at 1190-91. If the IEP in Doe complied with EAHCA's procedural requirements, then Tara's most certainly did. Unlike the IEP in Doe, Tara's contained a statement of present educational level and objective standards for measuring performance. Moreover, the school board officials and her parents had not only her most recent grades but also a recent evaluation of her language skills. Thus, EAHCA were met even though the IEP could have been written with greater detail.
 
 
 19
 B. Whether the IEP was reasonably designed to provide
 
 
 20
 educational benefit.
 
 
 21
 EAHCA requires the school district to provide each handicapped student a free appropriate public education. A free appropriate public education
 
 
 22
 consists of educational instruction specially designed to meet the unique needs of the handicapped child, supported by such unique needs of the handicapped child, supported by such services as are necessary to permit the child "to benefit" from the instruction.
 
 
 23
 Rowley, 458 U.S. at 188-89. An appropriate education under the Act focuses on the procedural requirements of assessing individual needs; it does not mandate "any substantive standard prescribing the level of education to be accorded handicapped children". Id. at 189. When a child, such as Tara, is "mainstreamed," the benefit of the services is monitored by the system itself in its regular exams and advancements. Id. at 203. Automatic advancement does not necessarily mean that a child is receiving a free appropriate public education, but it is an important factor. Id. at n. 25. Another important factor is the child's performance on standardized tests. Hall v. Vance City Bd. of Educ., 774 F.2d 629, 635-36 (4th Cir.1985).
 
 
 24
 Although Tara's case does not present as strong an example of educational benefit as that of the deaf plaintiff in Rowley, who performed above average in her classes and who was described as very well adjusted, Tara did receive a free appropriate public education. Tara completed the necessary requirements to graduate from high school with her own class. Although she failed a number of courses, she mastered the material, except for Algebra II, prior to graduation. Tara did not learn all of the 504 Essential Words that her speech therapist sought to review, but she did effectively use the coping techniques necessary to learn material on her own. Tara also passed the Tennessee Proficiency Test in the ninth grade and performed within the average range on the Stanford Test of Academic Skills. Her ACT scores were far below average, but Tara, unlike most students who took the test in both their junior and senior years, took it only once, during her junior year. Based on her academic achievement and standardized test scores, Tara did receive educational benefit.
 
 
 25
 C. Whether Tara's graduation from high school cuts off her
 
 
 26
 eligibility under the Act.
 
 
 27
 In limited circumstances, EAHCA requires public education past the point where eligibility for services normally ceases. EAHCA provides:
 
 
 28
 [A] free appropriate public education ... for all handicapped children between the ages of three and twenty-one within the State ... except that, with respect to handicapped children ... aged eighteen to twenty-one, inclusive, the requirements of this clause shall not be applied in any State if the application of such requirements would be inconsistent with state law or practice ... respecting public education within such age groups in the State.
 
 
 29
 20 U.S.C. Sec. 1412(2)(B). Department of Education regulations interpret this section to mean that "(i)f a public agency provides education to non-handicapped children in any of these age groups, it must make a free appropriate public education available to at least a proportionate number of handicapped children of the same age." 34 C.F.R. Sec. 300.300(b)(2) (1984). Courts reviewing this section have refused to impose an interpretation requiring school districts to educate handicapped children until age twenty-one. Wexler, 1985-86 EHLR DEC. 557:288. When a handicapped student appropriately graduates from high school, the obligations of the school board cease. Id.; Gorski v. Lynchburg School Bd., 1988-89 EHLR DEC. 441:415 (4th Cir.1989). Because Tara completed the credit hours and curriculum necessary to graduate from high school, and because she failed to present evidence that non-handicapped children receive post-graduation secondary education under Tennessee law, her graduation cut off her right to further secondary education from the state.