NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0091n.06

No. 17-4116

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| DELAINA BARNEY, | ) | **FILED**<br>Feb 25, 2019<br>DEBORAH S. HUNT, Clerk |
|  | ) |  |
| Plaintiff-Appellant, | ) |  |
|  | ) |  |
| v. | ) | ON APPEAL FROM THE |
|  | ) | UNITED STATES DISTRICT |
| AKRON BOARD OF EDUCATION, | ) | COURT FOR THE |
|  | ) | NORTHERN DISTRICT OF |
| Defendant-Appellee. | ) | OHIO |
|  | ) |  |

Before: BATCHELDER, COOK, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. Delaina Barney argues that the Akron Board of Education violated the Individuals with Disabilities Education Act in nearly a dozen ways. The district court rejected all her arguments. We affirm.

I.

The Individuals with Disabilities Education Act provides states with funding for special education in return for their guarantee to provide disabled students a "free appropriate public education." 20 U.S.C. § 1412(a)(1). A free appropriate public education includes instruction tailored to the disabled student's unique needs. *Id.* § 1401(9), (26), (29). The Act therefore requires schools to work with parents to prepare an "individualized educational program" for each eligible student. *Id*. § 1414.

Delaina Barney's son, J.B., has cognitive disabilities and a peanut allergy. J.B. has received special education for his cognitive disabilities since preschool. [R. 1-2, Pg. ID 14.] J.B.

has not received special services under the Act for his allergy, but his school had a medical plan for preventing and responding to allergic reactions. [*See* Admin. R. Ex. 3.] Among other safeguards, the school had instructed food servers not to bring peanut butter to J.B.'s classroom when serving students their free breakfast.

In 2014, Barney enrolled J.B. as a third-grader at an Akron public elementary school. Early in the fall semester, school employees accidentally included sealed containers of peanut butter on the breakfast carts taken to J.B.'s classroom. A food server noticed the mistake and told J.B.'s teacher. The teacher then brought J.B. to her office to eat his breakfast. She saw no signs of an allergic reaction, and J.B. went to class after he finished his meal. When Barney heard about J.B.'s potential exposure to peanut butter, however, she visited the school to check on him. Barney and J.B.'s teachers disagreed about whether J.B. was suffering an allergic reaction, but the school principal still agreed to drive Barney and J.B. to the emergency room. (What happened there is unclear from the record.)

A few weeks later, Barney met with J.B.'s teachers to discuss his "individualized education program." The teachers described J.B.'s academic progress, as well as his behavioral improvements since he began taking Ritalin for his ADHD. Barney was moved to tears when she heard about J.B.'s progress, and signed off on the proposed program without objection. Two days later, however, Barney removed J.B. from the school.

Barney thereafter filed a complaint with the Ohio Department of Education under the Act, challenging the school district's response to J.B.'s peanut allergy and the district's implementation of J.B.'s educational program. [R. 1-3.] After a hearing, the Department of Education ruled for the school district. [R. 1-4.] Barney appealed the decision to a state-level review officer, who

affirmed. [R. 1-2.] Barney then brought this lawsuit. The district court likewise entered judgment in favor of the district. Barney now appeals.

II.

We review the district court's factual findings for clear error and its legal conclusions de novo. *See Tucker by Tucker v. Calloway Cty. Bd. of Educ.*, 136 F.3d 495, 503 (6th Cir. 1998).

A.

Barney primarily claims that the school district violated the Act's procedural provisions in various ways. To obtain relief for a procedural violation, Barney must show that the violation caused "substantive harm" to her or to J.B. *Deal v. Hamilton Cty. Bd. of Educ.*, 392 F.3d 840, 854 (6th Cir. 2004).

Barney argues that the school district repeatedly deprived her of "a meaningful opportunity to participate" in the process of developing J.B.'s educational program. *Id*. at 858-59. Specifically, Barney says that the school district failed to ensure that she understood J.B.'s program, decided how to address J.B.'s allergy without her input, and impermissibly delayed its 2014 reevaluation of J.B.'s disabilities. But Barney does not identify any part of J.B.'s educational program that she did not understand. Nor does she explain how these alleged violations affected J.B.'s education. Barney thus cannot show that she or J.B. suffered any "substantive harm" from these alleged wrongs. *See id.* at 854.

Barney next argues that the school district violated the Act by failing to provide copies of J.B.'s educational records, which in turn prevented her from obtaining an independent expert's opinion about the adequacy of J.B.'s program. *See Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 60-61 (2005). But the record belies this argument. During the administrative proceedings, Barney conceded that she had received these records prior to the first hearing. [R. 1-2, Pg. ID 12; R. 1-4,

Pg. ID 89.] And she fails to explain how any delay in obtaining those records prevented her from seeking an expert opinion.

Barney also argues that the district violated the Act by failing to consider whether J.B. would benefit from an extended school year. *See Bd. of Educ. of Fayette Cty., Ky. v. L.M.*, 478 F.3d 307, 314-15 (6th Cir. 2007). But the record shows that Barney attended a meeting where school officials did discuss an extended school year, and that she said nothing when they decided that J.B. was not eligible for those services. [Admin. R. Ex. 11, Pg. 11; Tr., Pg. ID 323.] Hence Barney has not shown that the district violated the Act on this ground.

Finally, Barney argues that the school district violated the Act's mandate to educate J.B. in the "least restrictive environment"—that is, to educate J.B. "alongside non-disabled children to the maximum extent appropriate[.]" *McLaughlin v. Holt Pub. Sch. Bd. of Educ.*, 320 F.3d 663, 671-72 (6th Cir. 2003). In support of that argument, Barney asserts that she had to drive J.B. to a field trip, which isolated J.B. from his classmates who traveled on a school bus. But Barney herself insisted on driving J.B. out of fear that he might be exposed to peanut butter on the bus. She cannot blame the school district for her own decision to separate J.B. from his peers. *Cf. Doe By & Through Doe v. Def. I*, 898 F.2d 1186, 1192 (6th Cir. 1990).

B.

Barney also challenges the substance of J.B.'s educational program. "To meet its substantive obligation under the Act, a school must offer an [educational program] reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 999 (2017).

Barney first takes issue with J.B.'s program, which (she says) was not sufficiently "ambitious" or specific. Contrary to Barney's assertion, however, the program contained goals

tailored to J.B.'s weaknesses in five categories: speech, fine motor skills, reading, writing, and math. [*See* R. 1-2, Pg. ID 26; Admin. R. Ex. 10-11.] Each goal included detailed academic objectives. Moreover, the program specified how much time should be spent weekly on each goal and provided for regular reporting of J.B.'s progress to his parents. [Admin. R. Ex. 10-11.] Barney therefore has not shown why the program was not "reasonably calculated" to enable J.B. to make "progress appropriate in light of [his] circumstances." *Id.*

Barney also argues that the school district should have revised J.B.'s plan mid-year because J.B. was not meeting his goals. But the Act guarantees access to education—not that a student will achieve a particular outcome. *See Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 192 (1982). And Barney offers no evidence that J.B.'s progress was so deficient that the school district should have revised his goals in the middle of the school year. Hence this argument is without merit.

Barney next argues that the J.B.'s program was not "reasonably calculated" to address his unique problems. *See Endrew F.*, 137 S. Ct. at 999. Specifically, she says that J.B. was bullied at school and that the district should have addressed the bullying in his educational program. But Barney never told the school about the bullying—even when she was explicitly asked about bullying in a questionnaire for J.B.'s reevaluation. [R. 1-4, Pg. ID 62; Tr. Pg. ID 88.] And Barney does not explain why the district should have otherwise identified bullying as a problem that was severe enough to warrant modification to J.B.'s educational program.

Barney also contends that J.B.'s program should have addressed his peanut allergy. Yet the district noted that J.B. had a peanut allergy in his written individualized-education program under the heading, "other information." [R. 1-4, Pg. ID 83.] And the school district had a separate medical plan to address his allergy. The Act does not require more. *See id.* at 999-1000.

Finally, Barney contends that the school district should have addressed problems resulting from J.B.'s transfers among various schools in the district (all of which transfers Barney initiated). But Barney nowhere explains what the district should have done differently because of those transfers. She therefore has not shown that J.B's educational program was not "reasonably calculated" to enable J.B. to make "progress appropriate in light of [his] circumstances." *Id.* at 999.

Barney's remaining arguments—that the district court improperly denied her request for discovery and that the court made various mistakes of fact—are undeveloped. We therefore do not reach them. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

\*     \*     \*     \*     \*

The district court's judgment is affirmed.