**Molly O'TOOLE, by and through parents and legal guardians, Kevin and Kathy O'TOOLE, Plaintiff,**

**v.**

**OLATHE DISTRICT SCHOOLS UNIFIED SCHOOL DISTRICT NO. 223, Defendant.**

**No. 96–2329–JWL.**

United States District Court, D. Kansas.

April 8, 1997.

---

Stephen Walker, Beachwood, OH, James L. Germer, K A P S, Topeka, KS, Peter R. Williams, Russell, KS, for plaintiff.

Daniel B. Denk, Gregory P. Goheen, McAnany, Van Cleave & Phillips, P.A., Kansas City, KS, Joan K. Rowland, Hillix, Brewer, Hoffhaus, Whittaker & Wright, L.L.C., Kansas City, MO, Michael G. Norris, Norris, Keplinger & Logan, Overland Park, KS, for defendant.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

### I. Introduction.

This matter comes before the court on the defendant's motion for judgment as a matter of law pursuant to Fed.R.Civ.Pro. 52(c) or, in the alternative, for summary judgment pursuant to Fed.R.Civ.Pro. 56 (Doc. # 28), the plaintiff's motion for an enlargement of time (Doc. # 51), and the plaintiff's motion to reconsider (Doc. # 61). In her complaint, the plaintiff argues that the defendant denied her a "free appropriate public education" as required by the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.*, and Kansas law. The defendant contends that the uncontroverted evidence demonstrates otherwise. For the reasons discussed below, the court grants the defendant's summary judgment motion and denies the plaintiff's motions. As a result, the court orders that the plaintiff's complaint be dismissed.

### II. Background of Individuals with Disabilities Education Act.

The Individuals with Disabilities Education Act (IDEA) provides federal money to state and local educational agencies for the education of disabled children. *See* 20 U.S.C. § 1400(b)(9). The IDEA guarantees all disabled children between the ages of three and twenty-one access to " . . . a free appropriate public education which emphasizes special education and related services designed to meet their unique needs . . . ." 20 U.S.C. § 1400(c). The IDEA defines "a free appropriate public education" as,

special education and related services that—

(a) have been provided at public expense, under public supervision and direction, and without charge,

(B) meet the standards of the State educational agency,

(C) include an appropriate preschool, elementary, or secondary school education in the State involved, and

(D) are provided in conformity with the individualized education program required under section 1414(a)(5) of this title.

20 U.S.C. § 1401(a)(18). The IDEA "... also creates an obligation to educate disabled children in the least restrictive environment in which they can receive an appropriate education." *Urban by Urban v. Jefferson County School Dist. R–1,* 89 F.3d 720, 722 (10th Cir.1996) (citations and internal quotations omitted).

In order to implement these goals, the IDEA requires that states provide each disabled child with an individualized education program (IEP), which must be reviewed at least annually. 20 U.S.C. § 1414(a)(5). An IEP is a written statement of (1) the child's present performance level, (2) the annual goals and short-term instructional objectives to be attained, (3) the specific educational services to be provided and the extent to which such child will be able to participate in regular educational programs, (4) the child's needed transition services, (5) the projected dates for initiation and completion of such services, and (6) the appropriate objective criteria and evaluation procedures and schedules for determining, on at least an annual basis, whether the instructional objectives are being achieved. 20 U.S.C. § 1401(a)(20); 34 C.F.R. §§ 300.343(d), 300.346(a). The IDEA places special emphasis on parental participation in the development of the IEP, requiring written parental notification of any change of or refusal to change the "identification, evaluation, or educational placement of the child or the provision of a free appropri-

ate public education to the child...." 20 U.S.C. § 1415(b)(1)(C). Parents are also entitled to bring a complaint on any matter relating to the evaluation or placement of their child and to seek an impartial due process hearing on their complaint. 20 U.S.C. § 1415(b)(2). Any party aggrieved by the Hearing Officer's administrative findings and decision may appeal to the state educational agency for an impartial review. 20 U.S.C. § 1415(c). The Reviewing Officer must make an independent decision. *Id.* Any party aggrieved by the Reviewing Officer's decision may appeal it to a district court of the United States without regard to the amount in controversy. 20 U.S.C. § 1415(e)(2). The reviewing court is required (1) to examine the records of the administrative proceedings, (2) to hear additional evidence if requested by a party, and (3) to base its decision on the preponderance of the evidence. *Id.*

### III. Facts.[1]

■ The plaintiff was born on May 6, 1982. Shortly after her birth, the plaintiff was diagnosed with edema and eventually developed pancreatitis and hepatitis. When she was thirty months old, the plaintiff was diagnosed with a hearing impairment and, shortly thereafter, began using hearing aids. On June 25, 1985, physicians at Kansas University Medical Center described the plaintiff's hearing loss as moderate to severe bilaterally. Subsequent evaluations indicated a moderate to severe sensorineural hearing loss in her right ear and a moderate to profound hearing loss in her left ear.

In the fall of 1988, the plaintiff was admitted to the defendant's hearing impaired program located at Scarborough Elementary School (SEC). On or about May 8, 1989, Ms.

---

1. Because the administrative proceeding in front of the Hearing Officer constituted a due process hearing, not a trial, and because other courts have addressed similar motions under Fed.R.Civ. Pro. 56, the court concludes that summary judgment is the appropriate mechanism under which to address the defendant's motion. *See Urban by Urban v. Jefferson County School Dist. R–1,* 89 F.3d 720 (10th Cir.1996). As a result, the court will view the evidence presented in a light most favorable to the plaintiff, *Jones v. Unisys Corp.,* 54 F.3d 624, 628 (10th Cir.1995), and disregard

all evidence not set forth in compliance with D.Kan. Rule 56.1.

The plaintiff correctly asserts that the IDEA permits a requesting party to present evidence to the court not contained in the administrative record. *See* 20 U.S.C. § 1415(e)(2). The only evidence outside the administrative record the plaintiff proffers is a report from Dr. Daniel Ling. *See Pl.'s Resp.,* Exhibit 27. Thus, the court will decide the defendant's summary judgment motion based on the administrative record and Dr. Ling's report.

Peggy Cumley, a psychologist employed by the defendant, measured the plaintiff's IQ using the Wechsler Intelligence Scale for Children–Revised. Ms. Cumley concluded that the plaintiff's performance IQ score was 72.

While the plaintiff attended SEC, an IEP was developed for her and reviewed and revised as needed (at least annually) during meetings attended by various specialists as well as the plaintiff's parents. During the 1991–92 school year, the plaintiff was in a dual mainstream and contained program. The plaintiff was in a resource room for 130 minutes a day and received speech and language therapy for 30 minutes a day.

In the summer of 1992, the plaintiff's biological mother died. As a result, the plaintiff's father, Mr. Kevin O'Toole, became more active in the plaintiff's education. The death of her mother had an understandably adverse impact on the plaintiff's attitude and behavior.

On February 23, 1993, Mr. O'Toole and Ms. Kathy Fulgham[2] were part of a team that formulated an IEP for the plaintiff. Other members of the team were G.L. Cox, the principal of SEC; Larry Meyer, a school psychologist; Hidy Scheisser, an audiologist; Deb Stryker, the plaintiff's hearing impaired teacher during the 1991–92 and 1992–93 school years; Amy Bonham, a school counselor who counseled the plaintiff from time to time; Patricia Bowers, a classroom teacher; and Norina Hatcher, the plaintiff's speech and language pathologist during her time at SEC. During this pleasant and congenial meeting, the plaintiff's level of educational performance, tests, and evaluation reports were discussed and explained to Mr. O'Toole and Ms. Fulgham. A statement of annual goals, a statement of short-term objectives, and a statement of specific special education services and related services were fully discussed with Mr. O'Toole and included in the plaintiff's IEP. Mr. O'Toole and Ms. Fulgham had access to the plaintiff's files and were encouraged to comment and ask questions, which were responded to by members of the team. During the IEP meeting, Mr. O'Toole and Ms. Fulgham did not express any unhappiness or disappointment with plaintiff's academic progress. They were supportive of the goals and objectives outlined in her IEP. At the end of the meeting, Mr. O'Toole and Ms. Fulgham were given a copy of the plaintiff's IEP and Mr. O'Toole consented to the plaintiff's continued placement at SEC.

In the months following the February IEP meeting, Mr. O'Toole and Ms. Fulgham received monitoring reports discussing the plaintiff's progress toward meeting the objectives in her IEP. Specifically, these monitoring reports indicated that the plaintiff met certain objectives, made adequate progress toward certain objectives, and did not make adequate progress toward other objectives. Upon receiving these reports, Mr. O'Toole felt free to contact either Ms. Stryker or Ms. Hatcher about any questions he might have concerning the reports. In fact, Mr. O'Toole kept in close contact with Ms. Stryker concerning the plaintiff's academic progress between February and May of 1993.

In June of 1993, Mr. O'Toole decided to have the plaintiff evaluated at the Central Institute for the Deaf (CID), which is located in St. Louis, Missouri. After evaluating the plaintiff, the CID issued a report setting forth the following pertinent recommendations:

1. Molly needs full-time special education with children of similar age and ability and should not be mainstreamed;

2. Molly needs intensive, individualized reading instruction by teachers experienced with hearing impaired children;

3. Molly's language and reading should be re-evaluated in one year, her intellectual ability should be re-evaluated in three years, and her hearing and hearing aids should continue to be evaluated on an annual basis; and

4. Molly should continue using hearing aids in both ears on volume # 3.

2. Shortly after the death of the plaintiff's mother, Mr. O'Toole began dating Ms. Fulgham. Ms. Fulgham took an active role in the plaintiff's education. In October of 1993, Mr. O'Toole and Ms. Fulgham were married.

*See Def.'s motion for Summ. J.*, Book 13 Exhibit # 10. Shortly after this evaluation, Mr. O'Toole applied, on behalf of the plaintiff, to the CID. In a letter dated July 9, 1993, the CID accepted the plaintiff as a full-time residential student for the 1993–94 school year. After receiving the CID's acceptance letter, Mr. O'Toole decided that he would send the plaintiff to the CID unless the members of the plaintiff's August IEP team meeting convinced him that she would receive an equivalent education at SEC.

In early August of 1993, Mr. O'Toole and Ms. Fulgham contacted Mr. Herman Cline, the defendant's Director of Special Education at the time, about obtaining reimbursement from the defendant for tuition and/or expenses arising from the plaintiff's education at the CID. Mr. Cline informed them that tuition reimbursement was not available and that he would have to look into expense reimbursement. On August 12, 1993, Mr. O'Toole and Ms. Fulgham requested by letter reimbursement of the plaintiff's travel expenses incurred transporting her to and from the CID. Shortly thereafter, Mr. O'Toole and Ms. Fulgham requested an IEP meeting concerning the plaintiff be held in late August.

Prior to the convening of the requested IEP meeting, Mr. Cline instructed his assistant director, Dr. Larry Cyrier, to assemble an IEP team to try to address and satisfy the concerns of Mr. O'Toole and Ms. Fulgham and to keep the plaintiff a student at SEC. Dr. Cyrier assembled an IEP team consisting of the February IEP team members (except Ms. Bowers and Ms. Bonham) and added Nancy Hermreck, a school social worker; Leslie Cappo, the plaintiff's new hearing impaired teacher; and Roberta Cline, the district's coordinator of deaf education.

■ On August 23, 1993, the plaintiff's IEP team met in order to formulate a written addendum to the plaintiff's February IEP. Mr. O'Toole and Ms. Fulgham were given a full and fair opportunity to express their concerns about the plaintiff's education at SEC. Mr. O'Toole and Ms. Fulgham informed the IEP team of the CID's recommendations and that they agreed with them. During the meeting, the team formulated goals and objectives and agreed (1) to pull the plaintiff out of the regular classrooms except for art, music, physical education, recess, and lunch; (2) to place her in a small group in the resource room with students of similar scale and functioning for individualized instructions on all of her academic subjects, (3) to evaluate the plaintiff's language and reading skills at least annually, (4) to give the plaintiff annual hearing and hearing aid evaluations, and (5) to continue providing individualized reading instruction to the plaintiff. In fact, the IEP team agreed to follow all of the CID's recommendations.[3] Although the meeting's atmosphere was cordial and cooperative, Mr. O'Toole did state early on that, "I don't care what you all do here today, I am taking Molly to C.I.D." Notwithstanding Mr. O'Toole's comment, the IEP team did their best to develop an IEP for the plaintiff.

Even though the IEP team adopted all of the CID's recommendations, Mr. O'Toole and Ms. Fulgham still had some problems with the IEP. First, they did not like the fact that the plaintiff would have some educational interaction with hearing students. Second, they did not want the plaintiff in a signing atmosphere because they felt it was counter-productive to her development of intelligible speech and spoken language. Rather, they preferred the oral teaching method. Third, they disapproved of the fact that the plaintiff would be placed in the fifth grade after her purported difficulties in the fourth grade.

At the conclusion of the IEP meeting, the IEP team members (other than Mr. O'Toole

---

**3.** The plaintiff controverts this key fact. However, the plaintiff does not refer to anything in the record supporting her contention as required by Fed.R.Civ.Pro. 56 and D.Kan. Rule 56.1 and, therefore, the fact is deemed uncontroverted. *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1546 (10th Cir.1995)(holding that in order to withstand summary judgment, the non-movant must identify a genuine issue of material fact by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein and that a court need not search the record to find uncited evidence which controverts a material fact); *see also United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991) ("Judges are not like pigs, hunting for truffles buried in briefs.")

and Ms. Fulgham) recommended that the plaintiff stay at SEC in order to pursue the above mentioned changes to her IEP. Mr. O'Toole disagreed and signed a form terminating the defendant's services to the plaintiff. However, prior to signing the form, Mr. O'Toole does not recall being informed of his due process right to an impartial hearing on the disputed issues concerning the plaintiff's IEP. Within several days after the meeting, Mr. O'Toole and Ms. Fulgham took the plaintiff to the CID and enrolled her in classes. The plaintiff has been a student at the CID ever since.

On August 27, 1993, the defendant notified Mr. O'Toole that his request for expense reimbursement was denied. On October 9, 1994, Mr. O'Toole and Ms. Fulgham requested a due process hearing regarding the plaintiff's education at the CID. Their request was granted and a thirteen day hearing was conducted over approximately a nine month period. The protracted hearing ended when the plaintiff rested her case and the Hearing Officer permitted the defendant to file a dispositive motion. In a Memorandum and Order dated March 28, 1996, the Hearing Officer granted the defendant's motion concluding (1) that K.S.A. § 72–962(f) does not created a higher educational standard than the IDEA creates; (2) that the plaintiff's IEPs adequately set forth annual goals, short term objectives, evaluative criteria, and present levels of functioning; (3) that the plaintiff failed to establish that the related services were inappropriate, the level of services offered was inappropriate, or the plaintiff was denied necessary services; (4) that the plaintiff's academic progress, or lack thereof, does not equate to the denial of a free and appropriate public education; and (5) that the IEP offered the plaintiff in August of 1993 satisfied the requirements under the IDEA and Kansas law and, therefore, the plaintiff is not entitled to reimbursement.

The plaintiff appealed the Hearing Officer's decision pursuant to K.S.A. § 72–974(b). As required by § 72–974(b)(1), the state board of education appointed a Reviewing Officer and directed her (1) to examine the record of the hearing, (2) to determine whether the procedures at the hearing were in accordance with the requirements of due process, (3) to afford the parties an opportunity for oral and/or written argument, (4) to seek additional evidence if necessary, (5) to render a decision within five days after completing her review, and (6) to send written notice of her decision to the parties. The plaintiff requested the opportunity to present additional evidence if the Reviewing Officer construed the defendant's motion as a summary judgment motion. After reviewing the record, the Reviewing Officer, in her discretion, determined that the defendant's dispositive motion is most appropriately characterized as one for summary judgment and that additional evidence was not necessary and, as a result, denied the plaintiff's request to present new evidence in a letter dated May 31, 1996.

In her decision dated June 17, 1996, the Reviewing Officer affirmed the Hearing Officer's Memorandum and Order in part and reversed and remanded it in part. Specifically, the Reviewing Officer affirmed on the following issue: the burden of proof rests on the plaintiff; K.S.A. § 72–962(f) does not create a higher educational standard than the IDEA creates; no prejudice resulted from the defendant's apparent failure to provided proper notice of the plaintiff's due process rights; the defendant was not required to inform the plaintiff and her parents of the possibility of reimbursement for the expenses surrounding the plaintiff's CID placement; the IEPs were reasonably calculated to enable the plaintiff to receive educational benefits in accordance with her abilities and capabilities; and the plaintiff is not entitled to reimbursement for the expenses arising from the plaintiff's CID placement because the plaintiff's parents had a meaningful opportunity to participate in the development of the plaintiff's IEPs and because the IEPs were reasonably calculated to enable the plaintiff to receive educational benefits in accordance with her abilities and capabilities. However, the Reviewing Officer reversed the Hearing Officer on two issues. First, the Reviewing Officer concluded that the objectives generated in the February and August IEPs failed to meet the procedural requirements set forth by state and federal legislation. The Reviewing Officer explained,

Particularly deficient are the five goals which give the parent absolutely no idea of what his child is supposed to be able to accomplish within a year's time. Also, the majority of objectives do not set intermediate steps or milestones to help track the progress being made on the objectives during the course of the year. Further, most of the objectives do not provide objective criteria for the teachers and parent to judge whether or not they were met. Finally, the strengths and needs listed by the school district do not allow the reader to have a clear or accurate picture of what M's present levels of functioning are.

Second, the Reviewing Officer concluded that the February and August IEPs failed to meet the procedural requirements concerning the description of related services set forth by state and federal legislation. Thus, the Reviewing Officer remanded this matter in order to determine whether the plaintiff is due prospective relief in the form of requiring that the procedures utilized by the defendant to develop future IEPs comply with federal and state laws.

On July 5, 1996, the defendant filed a motion requesting the Reviewing Officer to reconsider her decision to reverse and remand the issue of whether the plaintiff is entitled to some prospective relief. On July 16, 1996, the Reviewing Officer denied the defendant's motion.

On July 16, 1996, the plaintiff filed her underlying complaint with this court seeking de novo review, pursuant to 20 U.S.C. § 1415, of the adverse aspects of the Hearing Officer's Memorandum and Order and the Reviewing Officer's Decision. The plaintiff requested the following relief: an order defining the standard by which a free appropriate public education is to be judged in the State of Kansas; an order confirming that the IEPs produced by the defendant are procedurally and substantively defective and, as a result, the plaintiff has been denied her right to a free and appropriate public education as defined by the IDEA; an order requiring the State of Kansas to adopt procedural safeguards that are consistent with the IDEA's requirements; an order awarding the plaintiff reasonable attorney fees and

costs arising from the due process hearing, the administrative appeal, and this action; and such other and further relief deemed just by the court. On July 29, 1996, the defendant filed a cross appeal asserting that the Reviewing Officer's adverse factual findings went beyond the scope of her authority as established in K.S.A. § 72–974(b), that the Reviewing Officer failed to give the Hearing Officer's contrary factual findings the appropriate deference, and that the Reviewing Officer's adverse factual findings are contrary to the evidence presented in the due process hearing. The defendant requests that the court enter an order reversing the Reviewing Officer's Decision with respect to the findings concerning the IEPs' compliance with state and federal regulations and concerning the availability of prospective relief and affirming the Hearing Officer on these issues.

### IV. Discussion.

### A. Defendant's dispositive motion (Doc. 128).

### 1. Statute of limitations.

The defendant contends that the plaintiff's October 9 request for a due process hearing is barred because it was not filed within thirty days of Mr. O'Toole's decision to reject the August IEP and remove the plaintiff from the defendant's elementary school. See K.S.A. § 60–2101(d); see also K.S.A. § 77–601 et seq. In response, the plaintiff argues that the defendant's statute of limitations argument is without merit because the defendant failed to properly inform her father of her right to appeal the defendant's decision to an impartial hearing officer as required by 34 C.F.R. § 300.505. The plaintiff also argues that she timely filed her request for a due process hearing because a three year statute of limitations period is appropriate. See K.S.A. § 60–512(2). In reply, the defendant argues that although there is a fact question concerning whether Mr. O'Toole received the requisite notice at the plaintiff's August IEP, it provided Mr. O'Toole with notice of the plaintiff's due process rights in connection with the February IEP and, therefore, it was not required to reinform him of such rights at the time of the

August IEP. 34 C.F.R. § 300.504 Appendix C Question 32. In support of this contention, the defendant points to the signed consent form attached to the plaintiff's February IEP, which indicates that Mr. O'Toole read and understood the "Parental Rights in Special Education Document."

No court has addressed the issue of what statute of limitations applies to a request for a due process hearing pursuant to the IDEA in Kansas. However, the court need not reach this issue due to evidentiary shortcomings in the defendant's argument. Specifically, in support of its position that Mr. O'Toole received the requisite notice of his daughter's due process right to appeal, the defendant cites to the Notification/Consent of Proposed Action form contained within the plaintiff's February IEP, which is signed by Mr. O'Toole and indicates that he read and understood the Parental Rights in Special Education Document. *See Def.'s motion for Summ. J.*, Book # 3 Exhibit # 6. However, the defendant does not provide the court with a copy or factual description of the Parental Rights in Special Education Document. Thus, as a factual matter, the court has no evidentiary basis to conclude that the Parental Rights in Special Education Document contains the requisite notice of the plaintiff's due process right to appeal the defendant's decision to an impartial hearing officer. Moreover, Mr. O'Toole does not admit that he received such notice in connection with the February IEP. He contends that, although he signed the plaintiff's February IEP, he never read the Parental Rights in Special Education Document before he signed either of the plaintiff's IEPs. *See Def.'s motion for Summ. J.*, Book # 1 Exhibit # 13 at 2990. Thus, it is controverted whether Mr. O'Toole received notice of his daughter's due process right to appeal the defendant's decision to an impartial hearing officer. As a result, the court rejects the defendant's statute of limitations argument because there is a genuine issue of fact concerning the issue of whether and when the

plaintiff's father received notice of her due process right to appeal the defendant's decision to an impartial hearing officer as required by 34 C.F.R. § 300.505. *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. at 2553–54.

### 2. *Summary judgment standard.*

When considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non-moving party. *Jones v. Unisys Corp.*, 54 F.3d 624, 628 (10th Cir.1995). A moving party who bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.Pro. 56(c); *Anglemyer v. Hamilton County Hosp.*, 58 F.3d 533 (10th Cir.1995). If the moving party does not bear the burden of proof at trial, it must show "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

Once the movant meets these requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The non-movant may not merely rest on the pleadings to meet this burden. *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511. More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" Fed.R.Civ.P. 1." *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2555.

### 3. *Scope of review.*[4]

▮ Even though the IDEA states that the reviewing court should base its decision

---

**4.** When exercising its reviewing authority, the reviewing court must remember that the burden of proof rests with the party attacking the IEP to show why the educational setting established by the child's IEP is not appropriate. *Johnson v.*

*Indep. Sch. Dist. No. 4 of Bixby, Tulsa County, Okl.*, 921 F.2d 1022, 1026 (10th Cir.1990), *cert. denied*, 500 U.S. 905, 111 S.Ct. 1685, 114 L.Ed.2d 79 (1991); *Hall v. Shawnee Mission Sch. Dist.*, 856 F.Supp. 1521, 1524 (D.Kan.1994) (cita-

on the preponderance of the evidence, it is not an invitation to the reviewing court to substitute its own notions of sound educational policy for those of the school authorities which they review. *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley,* 458 U.S. 176, 206, 102 S.Ct. 3034, 3051, 73 L.Ed.2d 690 (1982).

> The very importance which Congress has attached to compliance with certain procedures in the preparation of an IEP would be frustrated if a court were permitted simply to set state decisions at naught. The fact that § 1415(e) requires that the reviewing court receive the records of the state administrative proceedings carries with it the implied requirement that due weight shall be given to these proceedings. And we find nothing in the Act to suggest that merely because Congress was rather sketchy in establishing substantive requirements, as opposed to procedural requirements for the preparation of an IEP, it intended that reviewing courts should have a free hand to impose substantive standards of review which cannot be derived from the Act itself. In short, the statutory authorization to grant such relief as the court determines is appropriate cannot be read without reference to the obligations, largely procedural in nature, which are imposed upon recipient States by Congress.

*Id.* (internal quotations omitted).

Thus, the reviewing court's inquiry in suits brought under § 1415(e)(2) is twofold. *Id.*

> First, has the State complied with the procedures set forth in the Act?[5] And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits?[6] If these requirements are met, the State has com-

plied with the obligations imposed by Congress and the courts can require no more.

*Id.* 206–07, 102 S.Ct. at 3051. The Tenth Circuit has described this inquiry as a modified *de novo* review. *Murray v. Montrose County Sch. Dist. RE–1J,* 51 F.3d 921, 927 (10th Cir.1995) (citations omitted).

■ In assuring that the requirements of the IDEA have been met, the reviewing court must be careful to avoid imposing its view of preferable educational methods upon the states. *Rowley,* 458 U.S. at 207, 102 S.Ct. at 3051.

> The primary responsibility for formulating the education to be accorded a handicapped child, and for choosing the educational method most suitable to the child's needs, was left by the Act to state and local educational agencies in cooperation with the parents or guardian of the child. The Act expressly charges States with the responsibility of acquiring and disseminating to teachers and administrators of programs for handicapped children significant information derived from educational research, demonstration, and similar projects, and of adopting, where appropriate, promising educational practices and materials. In the face of such a clear statutory directive, it seems highly unlikely that Congress intended courts to overturn a State's choice of appropriate educational theories in a proceeding conducted pursuant to § 1415(e)(2).

*Id.* at 207–08, 102 S.Ct. at 3051 (internal citations and quotations omitted).

Prior to *Rowley,* the Supreme Court cautioned that courts lack the "specialized knowledge and experience" necessary to resolve "persistent and difficult questions of educational policy." *San Antonio Indep. Sch. Dist. v. Rodriguez,* 411 U.S. 1, 42, 93

---

tions omitted). Thus, the plaintiff bears the burden of demonstrating why the defendant's educational setting established by the plaintiff's IEPs is not appropriate. *Id.*

**5.** This inquiry will require a court not only to satisfy itself that the state has adopted the state plan, policies, and assurances required by the IDEA, but also to determine that the state has created an IEP for the child in question which conforms with the requirements of § 1401(19).

*Rowley,* 458 U.S. at 206 n. 27, 102 S.Ct. at 3051 n. 27.

**6.** When a child with disabilities is being educated in the regular classrooms of a public school system, the achievement of passing marks and advancement from grade to grade will be one important factor in determining educational benefit. *Rowley,* 458 U.S. at 207 n. 28, 102 S.Ct. at 3051 n. 28.

S.Ct. 1278, 1301, 36 L.Ed.2d 16 (1973). The *Rowley* court stated that it believed that "... Congress shared that view when it passed the ... [IDEA]." *Rowley*, 458 U.S. at 208, 102 S.Ct. at 3052. The *Rowley* court concluded that Congress' intention was not that the IDEA displace the primacy of states in the field of education, but that states receive funds to assist them in extending their educational systems to the disabled. *Id.* As a result, once the reviewing court determines that the requirements of the IDEA have been met, its inquiry is over because questions of methodology are for resolution by the states. *Id.*

### 4. *Educational standard.*

#### a. *IDEA standard.*

In addressing what Congress meant by a free appropriate public education, the Supreme Court has opined that the congressional intent behind the passage of the IDEA "was more to open the door of public education to handicapped children on appropriate terms than to guarantee any particular level of education once inside." *Rowley*, 458 U.S. at 192, 102 S.Ct. at 3043. Thus, the IDEA imposes no clear obligation upon recipient states beyond the requirement that children with disabilities receive some form of specialized education formulated under the IDEA's extensive procedures. *Id.* at 193–95, 102 S.Ct. at 3044–45.

Implicit in Congress' intent to provide access to a free appropriate education is the requirement that the public education to which states provide access be sufficient to confer some educational benefit regardless of the nature or severity of the child's disability. *Rowley*, 458 U.S. at 200, 201 n. 23, 102 S.Ct. at 3047–48, 3048 n. 23. At a minimum, the IDEA requires "... access to specialized instruction and related services which are individually designed to provide educational benefit to the handicapped child." *Id.* at 201, 102 S.Ct. at 3048. The educational benefit

must be more than trivial or *de minimis* and must be likely to produce progress, not regression or trivial educational advancement. *Hall v. Shawnee Mission Sch. Dist.*, 856 F.Supp. 1521, 1528 (D.Kan.1994) (citations and quotations omitted). However, the IDEA does not require the states to maximize each child's potential commensurate with the opportunity provided other children. *Rowley*, 458 U.S. at 198–99, 102 S.Ct. at 3046–47.

■ The IDEA also requires the states to educate children with disabilities in classrooms with non-disabled children whenever possible. *Rowley*, 458 U.S. at 202, 102 S.Ct. at 3048–49, 20, U.S.C. § 1412(5). This "mainstreaming" requirement has been interpreted to prohibit a school from placing a disabled child in a classroom with only disabled children if educating the child with supplementary aids and support services can be achieved satisfactorily. *Hall*, 856 F.Supp. at 1528 (citing *Oberti v. Bd. of Educ.*, 995 F.2d 1204, 1207 (3d Cir.1993)). Thus, the school district's obligation is to balance the goal of providing a disabled child with some educational benefit with the goal of providing that benefit in the least restrictive environment. *Id.*

#### b. *Kansas standard—K.S.A. § 72–962(f).*

■ In its definition of a free appropriate education, the IDEA specifically recognizes that states may adopt legislation which requires public schools to exceed the IDEA's standards. 20 U.S.C. § 1401(a)(18)(B). Thus, if a state chooses to adopt a higher standard, a school district violates the IDEA if it fails to satisfy that higher standard. *Id.*

■ In this case, the plaintiff contends that K.S.A. § 72–962(f) raises the IDEA's standard.[7] The court disagrees. Section 72–962(f) states, in pertinent part,

---

7. Section 72–962(f) was amended in 1994. 1994 Kan.See.Laws, ch. 307. Thus, the conduct in question occurred prior to this amendment. Because the 1994 amendment to § 72–962(f) is not procedural or remedial and because the Kansas Legislature did not indicate that the amendment should be applied retroactively, the court con-

cludes that the pre-amended version of § 72–962(f) governs this matter. *See Ripley v. Tolbert*, 260 Kan. 491, 501, 921 P.2d 1210 (1996)("A statute operates prospectively unless its language clearly indicates that the legislature intended that it operate retrospectively.") (citations omitted).

'Exceptional children' means persons who ... differ in physical, mental, social, emotional or educational characteristics to the extent that special education services are necessary to enable them *to Progress toward the maximum of their abilities or capacities.*[8]

K.S.A. § 72–962(f)(2)(emphasis added). Section 72–962(f)'s language, which is definitional in nature, does not specifically state that it raises the IDEA's standard nor does it purport to impose any affirmative obligation on the state. Thus, on its face, § 72–962(f)(2) does not support the plaintiff's argument. However, the plaintiff appears to argue, without any citation to authority interpreting § 72–962(f)(2), that the court can and should infer a raised standard from the emphasized language. In support of her inference argument, the plaintiff attempts to compare § 72–962(f)'s language to the language of other states' statutes that have been interpreted by other courts as raising the IDEA's standard. Specifically, the plaintiff points to the following cases: *Roland v. Concord Sch. Comm.,* 910 F.2d 983, 991 (1st Cir.1990), cert. denied, 499 U.S. 912, 111 S.Ct. 1122, 113 L.Ed.2d 230 (1991), which held that Massachusetts General Law ch. 71B § 2[9] raised the IDEA's standard; *Burke County Bd. of Educ. v. Denton,* 895 F.2d 973, 983 (4th Cir.1990), which held that North Carolina General Statute § 115C–106(a)[10] raised the IDEA's standard; *Geis v. Bd. of Educ. of Parsippany–Troy Hills, Morris County,* 774 F.2d 575, 582–83 (3d Cir.1985), which held that New Jersey Administrative Code tit. 6 § 6:28–2.1[11] raised the IDEA's standard; and *Barwacz v. Mich. Dep't of Educ.,* 674 F.Supp. 1296, 1305–06 (W.D.Mich.1987), which held that Michigan Statute Annotated § 15.41711 and § 15.41751(1)[12] raised the IDEA's standard. This argument is also without merit.

Although the plaintiff attempts to distinguish it, the court finds *Doe v. Bd. of Educ. of Tullahoma City Schools,* 9 F.3d 455 (6th Cir.1993), *cert. denied,* 511 U.S. 1108, 114 S.Ct. 2104, 128 L.Ed.2d 665 (1994), which held that Tenn.Code Ann. § 49–10–101(a)(1)[13] does not the raise IDEA's standard, more persuasive. The *Doe* court, which acknowledged that other circuits have found state special education statutes to impose a higher standard than the IDEA imposes, nevertheless justified its decision on the fact that Tenn.Code Ann. § 49–10–101(a)(1) was passed before the IDEA and on the fact that no legislative history, Tennessee state court decision, or administrative pronouncement supported the higher standard argument. *Id.* at 457–58. Similarly, the relevant language in K.S.A. § 72–962(f)(2) was enacted prior to the IDEA. *See* 1974 Kan. Sess. Laws ch. 290 § 2; *see also* Pub.L. 94–142. Thus, as the *Doe* court stated, "... it is impossible to infer an intent to

---

**8.** After being amended in 1994, § 72–962(f) states, in pertinent part,

> 'Exceptional children' means persons who ... differ in physical, mental, social, emotional or educational characteristics to the extent that special education services are necessary to enable them to receive educational benefits in accordance with their abilities or capacities. K.S.A. § 72–962(f)(2). The amended language tracks the standard set forth by the *Rowley* court. *See Rowley,* 458 U.S. at 207, 102 S.Ct. at 3051.

**9.** When *Roland* was decided, Mass.Gen.L. ch. 71B, § 2 required the state to assure the *maximum possible development* of handicapped students. Mass.Gen.L. ch. 71B, § 2 (emphasis added).

**10.** When *Denton* was decided, N.C.Gen.Stat. § 115C–106(a) required the state to provide every child with *a fair and full opportunity to reach his full potential.* N.C.Gen.Stat. § 115C–106(a) (emphasis added).

**11.** When *Geis* was decided, N.J.Admin.Code tit. 6, § 6:28–2.1 required the state to provide a special education program and related services according to how the pupil *can best achieve success in learning.* N.J.Admin.Code tit. 6, § 6:28–2.1 (emphasis added).

**12.** When *Barwacz* was decided, § 15.41711 and § 15.41751(1) required the state provide special education programs and services *designed to develop the maximum potential* of each handicapped person. Mich. Stat. Ann. §§ 15.41711, 15.41751(1)(emphasis added).

**13.** Tenn.Code Ann. § 49–10–101(a)(1) provides, in pertinent part,

> It is the policy of this state to provide, and to require school districts to provide, as an integral part of free public education, special educational services *sufficient to meet the needs and maximize the capabilities of handicapped children.*
> (emphasis added).

expand the federal scheme simply from the enactment of this statute when the language in question predates the federal scheme." *Id.* Additionally, no Kansas state or federal court decision, no legislative history, and no administrative pronouncement supports the plaintiff's proposed interpretation of § 72–962(f)(2). In fact, a 1987 opinion from the Kansas Attorney General interpreting Kansas special education laws indicates that Kansas' educational standard is the same as the IDEA's standard. *See Op. Kan. Att'y Gen.* No. 87–156 (1987). Moreover, of all the statutes cited by the parties, the court believes that K.S.A. § 72–962(f)(2) most closely resembles the statutory language in *Doe.* Both the Kansas and Tennessee statutes discuss providing a disabled child with a sufficient opportunity to maximize his or her abilities or capabilities. Whereas, the statutes relied on by the plaintiff discuss maximizing a disabled child's potential, success, or development. Without getting into the nuances of the meanings of these words, the court agrees with the *Doe* court's conclusion that providing a sufficient opportunity to maximize a disabled student's abilities and capabilities connotes a less stringent standard than maximizing a disabled student's potential, success, or development. *Id.* at 458. As a result, the court concludes that Kansas law does not raise the IDEA's standard.

### 5. *Analysis.*

▉▉▉ The court recognizes that it must not impose its own notion of sound educational policy. However, this admonition does not prevent the court from reviewing the legal conclusions of the Hearing Officer and the Reviewing Officer concerning whether the defendant complied with the IDEA's procedures and whether the plaintiff's IEPs are reasonably calculated to enable the plaintiff to receive educational benefits. *See Rowley,* 458 U.S. at 206–07, 102 S.Ct. at 3051. Thus, while construing the facts in a light most favorable to the plaintiff, the court must independently determine whether the defendant violated the plaintiff's rights protected under the IDEA. *Id.*

### a. *Present level of educational performance.*

▉▉▉ An IEP is required to contain a statement of the disabled child's present levels of educational performance. 34 C.F.R. § 300.346(a)(1). "The statement shall include, as appropriate, health, vision, hearing, social and emotional status, general intelligence, educational performance, communicative status, motor abilities and vocational skills." K.A.R. § 91–12–41(f)(1). The uncontroverted evidence indicates that Mr. O'Toole and Ms. Fulgham actively participated in the formulation of the plaintiff's IEPs during which the plaintiff's present level of educational performance was thoroughly discussed and explained. Moreover, the plaintiff's IEPs also address all of the issues mentioned in K.A.R. § 91–12–41(f)(1) with the requisite specificity. *See Def.'s motion for Summ. J.,* Book # 3 Exhibits # 6 & 18; *see also Logue v. Shawnee Mission Public Sch. No. 512,* 959 F.Supp. 1338, 1348 (D.Kan.1997)(citing 34 C.F.R. § 300.346(a)(1)). As a result, with respect to the issue of whether the plaintiff's IEP provided an adequate statement of the plaintiff's present educational performance levels, the court concludes that they did and reverses the Reviewing Officer on this point to the extent she concluded otherwise. *See Logue,* at 1348.

### b. *Statement of annual goals.*

An IEP is required to contain a statement of the disabled child's annual goals. 34 C.F.R. § 300.346(a)(2). The statement of annual goals should describe the educational performance anticipated within a year's time. K.A.R. § 91–12–41(f)(2). The plaintiff's IEPs contained the following annual goals:

1. To improve reading, articulation, and English language skills;
2. To facilitate academics and language;
3. To improve social skills;
4. To enhance sports activities;
5. To present functional level curriculum.[14]

---

**14.** The plaintiff's February IEP only contained the first, second, and fourth goals. The remain-    ing goals were added at the August IEP meeting.

*Def.'s motion for Summ. J.*, Book # 3 Exhibits # 6 & # 8. They also identified which individual was responsible for helping the plaintiff reach each goal. *Id.*

The plaintiff argues that these annual goals are too general in nature. However, the plaintiff cites no legal authority requiring the defendant to set more specific annual goals. Because there is no legal authority and because the plaintiff's parents played an active role in the formulation of the plaintiff's IEP, the court concludes that the plaintiff's IEPs adequately set forth annual goals and, as a result, the court reverses the Reviewing officer on this point. *Urban by Urban v. Jefferson County School Dist. R–1*, 89 F.3d 720, 726 (10th Cir.1996); *Doe By and Through Doe v. Defendant I*, 898 F.2d 1186, 1191 (6th Cir.1990)("Adequate parental involvement and participation in formulating an IEP, not adherence to the laundry list of items given in section 1401(19), appear to be the Court's primary concern in requiring that procedures be strictly followed."); *Logue*, at 1349.

### c. Short-term instructional objectives.

An IEP is required to contain a statement of short-term instructional objectives and intermediate steps between the present level of performance and the annual goals. 34 C.F.R. § 300.346(a)(2); K.A.R. § 91–12–41(f)(3). The short-term instructional objectives must be measurable pursuant to objective criteria, evaluation procedures, and data collection schedules in order to determine, at least every twelve weeks, whether they are being met. K.A.R. § 91–12–41(f)(4).

The plaintiff's February IEP lists eighteen detailed and measurable short-term instructional objectives concerning the improvement of her reading, articulation, and English language skills; eight detailed and measurable short-term instructional objectives concerning the facilitation of her academics and language; and two detailed and measurable short-term instructional objectives concerning the enhancement of sports activities. *Def.'s motion for Summ. J.*, Book # 3 Exhibits # 6. The plaintiff's August IEP lists four detailed and measurable short-term instruc-

tional objectives concerning the improvement of social skills and four detailed and measurable short-term instructional objectives concerning the presentation of functional level curriculum. *Def.'s motion for Summ. J.*, Book # 3 Exhibits # 8. While most of these short-term instructional objectives do not contain a specific mechanism under which the plaintiff's progress is tested every twelve weeks, they all contain objective criteria by which the plaintiff's progress can be measured. Moreover, the uncontroverted evidence indicates that one of the defendant's representatives discussed the plaintiff's progress with Mr. O'Toole in detail more than once every twelve weeks. Thus, although the plaintiff's IEPs did not specifically provide for progress reports every twelve weeks, Mr. O'Toole clearly received such and then some. Because the court will not exalt form over substance, the court concludes that the plaintiff's IEPs adequately set forth short-term instructional objectives and procedures by which the plaintiff's progress could be measured on at least a twelve week basis and, as a result, reverses the Reviewing Officer on this point. *Urban by Urban*, 89 F.3d at 726; *Doe*, 898 F.2d at 1191; *Logue*, at 1349.

### d. Related services.

An IEP is required to contain a statement of what specific related services the disabled child is to receive. 34 C.F.R. § 300.346(a)(3); K.A.R. § 91–12–41(f)(5). The plaintiff's IEPs list the following related services: social work services as needed; speech/language services thirty minutes per day, transportation, an occupational therapist to perform screening of motor functioning, school counseling as appropriate, a behavior specialist to consult with the team as appropriate, and an inclusion facilitator as appropriate. *See Reviewing officer's Decision*, at 17.

The uncontroverted evidence indicates that Mr. O'Toole and Ms. Fulgham had ample opportunity to explore the related services provided to the plaintiff at the plaintiff's IEP meetings and that the plaintiff was never

denied any requested related services. Moreover, the statements contained in the plaintiff's IEPs describing the related services satisfy the requirements in 34 C.F.R. § 300.346(a)(3) and K.A.R. § 91–12–41(f)(5). *See Def.'s motion for Summ. J.*, Book # 3 Exhibits # 6 & # 8. As a result, with respect to the issue of whether the plaintiff's IEPs contained an adequate statement of what specific related services the plaintiff was to receive, the court concludes that they did and reverses the Reviewing Officer on this point. *Urban by Urban*, 89 F.3d at 726; *Doe*, 898 F.2d at 1191.

### e. 1993 IEPs—reasonably calculated to provide some educational benefit.

■ Construing the facts in a light most favorable to the plaintiff, the court concludes that the plaintiff has failed to meet her burden of demonstrating that the defendant denied her a free appropriate public education as defined by the IDEA and Kansas law. Simply because the plaintiff did not make the desired progress toward some of her objectives set out on her IEPs does not mean that the defendant violated the IDEA. *See* 34 C.F.R. § 300.350. The uncontroverted evidence indicates that the defendant made a good faith effort (1) to formulate IEPs which addressed Mr. O'Toole and Ms. Fulgham's suggestions and concerns and (2) to assist the plaintiff in achieving the objectives listed in her IEP. Moreover, because the IDEA requires school districts to mainstream handicapped children whenever possible, the defendant did not violate the IDEA when, contrary Mr. O'Toole and Ms. Fulgham's wishes, it concluded that the plaintiff's mainstreaming should continue in non-academic areas. Finally, the IDEA does not require the defendant to utilize one proven teaching method over another. Therefore, the defendant's decision to continue utilizing a signing teaching method, as opposed to the totally oral teaching method suggested by Mr. O'Toole and Ms. Fulgham, is also not a violation of the IDEA. Thus, the court concludes that the defendant has complied with the IDEA's procedures and that the plaintiff's IEPs were reasonably calculated to enable the plaintiff to receive more than *de minimis* educational benefits as required by the IDEA. *Rowley*,

458 U.S. at 198–200, 102 S.Ct. at 3046–48. As a result, the court grants the defendant's summary judgment motion and dismisses the plaintiff's complaint. *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. at 2553–54.

### B. Plaintiff's motion for enlargement of time (Doc. # 51).

■ The plaintiff requests an enlargement of time to file a formal written request to present additional evidence pursuant to 20 U.S.C. § 1415(e)(2). The plaintiff contends that the defendant is not prejudiced by her request because the defendant had timely notice of the plaintiff's intent to present additional evidence. The defendant responds that although she purportedly was aware of this additional evidence from virtually the outset of this case, the plaintiff has not identified the nature of her additional evidence nor explained why such evidence was not presented at the plaintiff's due process hearing. Thus, because discovery in this matter closed on November 30, 1996, thereby precluding the defendant from engaging in any meaningful discovery on it and because this matter is currently set for trial in May of 1997, *see Pretrial Order*, ¶ 9, ¶ 14, the defendant argues that it would be severely prejudiced if the court granted the plaintiff's request to file a formal written request to present additional evidence.

It is uncontroverted that, at virtually the outset of this matter, plaintiff's counsel voiced to the court and opposing counsel his intention to offer additional evidence pursuant to 20 U.S.C. § 1415(e)(2). However, plaintiff's counsel never identified what additional evidence he had or why it was relevant to this matter. Now, plaintiff's counsel requests an enlargement of time in order to file a formal written request to present additional evidence without explaining why he did not timely identify and produce such evidence during the discovery period, which closed over three months prior to the filing of this motion.

As a procedural matter, the court denies the plaintiff's motion because plaintiff's counsel did not file this motion prior to the expiration of discovery and because he has failed

to show excusable neglect justifying his late filing. D.Kan. Rule 6.1(a). Even if the court were to overlook the late filing of this request, plaintiff's counsel has also failed to show sufficient cause. If plaintiff's counsel knew about and voiced his desire to introduce additional evidence from virtually the outset of this matter, the court fails to see how cause exists justifying the plaintiff's motion for enlargement when he waited until two months before trial and three months after discovery closed to file this motion. Id.

Even if the court overlooked the procedural flaws in the plaintiff's motion, the court does not believe that based on what she has presented, the plaintiff is entitled to the relief she seeks an enlargement of time to pursue. In *Town of Burlington v. Dep't of Educ. for Commonwealth of Mass.*, 736 F.2d 773 (1st Cir.1984), *aff'd by*, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985), the First Circuit Court of Appeals addressed the issue of when an IDEA plaintiff could introduce additional evidence,

> The determination of what is "additional" evidence must be left to the discretion of the trial court which must be careful not to allow such evidence to change the character of the hearing from one of review to a trial de novo. A practicable approach, we believe, is that an administrative hearing witness is rebuttably presumed to be foreclosed from testifying at trial. A motion may then be made to allow such a witness to testify within specified limits stating the justification for the testimony. In ruling on motions for witnesses to testify, a court should weigh heavily the important concerns of not allowing a party to undercut the statutory role of administrative expertise, the unfairness involved in one party's reserving its best evidence for trial, the reason the witness did not testify at the administrative hearing, and the conservation of judicial resources. The court should look with a critical eye on a claim, such as made here, that the credibility of a witness is a central issue. The claim of credibility should not be an 'open sesame' for additional evidence. Such an approach followed by a pretrial order that identifies who may testify and limits the scope of the

testimony will enable the court to avoid a trial de novo.

*Id.* at 791. Thus, even if the plaintiff did timely file a motion identifying her additional evidence, the plaintiff has failed to justify the need for the additional evidence as discussed in *Town of Burlington. Id.* As a result, the court concludes that based on what has been presented to the court, the plaintiff is not entitled to the underlying relief sought in her motion and, therefore, it is also denied on the merits. *Id.;* D.Kan. Rule 6.1(a).

## C. Plaintiff's motion to reconsider (Doc. # 61).

### 1. Standard.

██ Under Fed.R.Civ.Pro. 59(e), the court, in its discretion, may alter or amend a judgment under certain circumstances. *Hancock v. City of Okla. City*, 857 F.2d 1394, 1395 (10th Cir.1988). Specifically, a court may reconsider an order if there is an intervening change in controlling law, if new evidence becomes available, or if the court determines that there is a need to correct clear error or prevent manifest injustice. *United States v. One Parcel Property*, No. 91–2398– GTV, 1993 WL 289198 at *1 (D.Kan. July 27, 1993); D.Kan. Rule 7.3. However, a Rule 59(e) motion is directed at reconsideration "of matters properly encompassed in a decision on the merits, and not initial consideration." *White v. N.H. Dep't of Employment Security*, 455 U.S. 445, 451, 102 S.Ct. 1162, 1166, 71 L.Ed.2d 325 (1982).

### 2. Analysis.

██ In an Order dated March 18, 1997, (Doc. # 58) the court denied the plaintiff's motion to strike, object or alternatively to file a surreply (Doc. # 57) except to the extent the plaintiff sought to file a surreply discussing *Logue v. Shawnee Mission Public Sch. U.S.D. No. 512*, 959 F.Supp. 1338 (D.Kan. 1997). The plaintiff requests that the court reconsider this Order and permit her to file a surreply that discusses issues beyond the *Logue* decision based on the fundamental principles of fairness and the interests of justice. Specifically, the plaintiff argues (1) that granting the full relief requested in the plaintiff's underlying motion (Doc. # 57)

would not delay the proceedings; (2) that without such relief, the court would be giving the defendant an unfair advantage in presenting factual and legal arguments; and (3) that the plaintiff is entitled to respond to arguments raised in the defendant's reply to strike or reject the plaintiff's response.

Beyond its citation of *Logue*, the defendant's reply memorandum does not raise any novel issues or arguments. The court, in its discretion, gave the plaintiff an opportunity to respond to the defendant's interpretation of *Logue* because it was decided after the plaintiff's briefing had closed. However, the court will not permit the plaintiff to raise new arguments or attempt to bolster her previously unsuccessful arguments in a motion to reconsider. *White*, 455 U.S. at 451, 102 S.Ct. at 1166. As a result, the court denies the plaintiff's motion to reconsider. *Id.*

**IT IS THEREFORE ORDERED BY THE COURT** that the defendant's motion for summary judgment (Doc. # 28) is granted and the plaintiff's motions for enlargement of time (Doc. # 51) and for reconsideration (Doc. # 61) are denied. As a result, the plaintiff's complaint is hereby dismissed and the following pending motions are denied as moot: the plaintiff's motion in limine (Doc. # 37), the defendant's motion to preclude the plaintiff from submitting additional evidence (Doc. # 38), the defendant's motion to preclude the plaintiff from submitting evidence concerning methodology (Doc. # 46), the defendant's motion to suspend 26(a) disclosure deadline (Doc. # 52), the plaintiff's motion to strike or alternatively to surreply (Doc. # 62).

**IT IS SO ORDERED.**